IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>ASCENA RETAIL GROUP, INC. d/b/a DRESSBARN<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Stewart Abramson ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1]

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

4. Plaintiff alleges that Defendant Ascena Retail Group, Inc. d/b/a Dressbarn ("Dressbarn") made an automated telephone call using equipment prohibited by the TCPA to send a text message to the Plaintiff, despite the fact that they had no business relationship with him.

5. Because the call to the Plaintiff was transmitted using technology capable of generating thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

7. Plaintiff Stewart Abramson is a Pennsylvania resident, and a resident of this District.

8. Defendant Ascena Retail Group, Inc. d/b/a Dressbarn is a Delaware corporation with its principal place of business in New Jersey.

## Jurisdiction & Venue

9. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000.00, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will likely result in at least one Class member from a different state.

10. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

11. Dressbarn regularly engages in business in this District, including owning and operating multiple stores in this District. That includes, but is not limited to, locations in Pittsburgh and Washington, PA.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the text message to the Plaintiff, and a number of putative class members reside in this District. Furthermore, venue is proper because a substantial part of property that is the subject of the action is situated in this District; the Plaintiff's cellular telephone.

## TCPA and Text Messaging Background

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing .can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

14. Unlike many federal statutes, Congress embedded the reasons for the TCPA into the statute itself with explicit Congressional Findings. 105 Stat. 2394, §§ 10, 12, 14 (notes following 47 U.S.C. § 227).

15. *Mims* explicitly cited these Congressional Findings in noting that "'automated or prerecorded telephone calls' . . . were rightly regarded by recipients as 'an invasion of privacy.'" *Id.* (citing 105 Stat. 2394). Accordingly, Congress found that:

> ***Banning such automated or prerecorded telephone calls*** to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the

   consumer, *is the only effective means of protecting telephone consumers* from
   this nuisance and privacy invasion.

*Id.* at § 14 (emphasis added).

  16. Indeed, as the United States Supreme Court recently held in a different context, "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, __ U.S. __, 134 S.Ct. 2473, 2494-95, 189 L.Ed.2d 430 (2014).

  17. In fact, the TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

  18. The TCPA categorically bans entities from initiating telephone calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

  19. A "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

  20. Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can actually cost their recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

  21. Many commercial SMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are

generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

22. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

## Factual Allegations

23. A text message is a "call" as that term is interpreted under the TCPA.

24. As such, text messages are subject to the TCPA's enforcement provisions.

25. Dressbarn uses telemarketing to promote its products.

26. Dressbarn's telemarketing efforts include the use of automated dialing equipment to send text messages.

27. On February 12, 2017, Dressbarn placed a telemarketing call to the Plaintiff's cellular telephone. Plaintiff's cellular telephone rang when it received this call to notify him that he had received a text message, which caused Plaintiff to check his cellular telephone to determine who had sent him a text message.

28. That telemarketing call was a broadcast form text message, which was received on the Plaintiff's cellular telephone as follows:



29.     Plaintiff has never done any business with Dressbarn and Plaintiff never provided Dressbarn with his cellular telephone number.

30.     The Caller ID for the text message stated, "21226".

31.     "21226" is an SMS Short Code, which is used for text message broadcasting to send out advertisements *en masse*.

32.     These facts, as well as the geographic distance between the Plaintiff and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS" or "autodialer") as that term is defined in 47 U.S.C. § 227(a)(1).

33.     The SMS Code "21226" is registered to Dressbarn, which demonstrates that they, or their agents, sent the text message.

34.     Dressbarn did not have the Plaintiff's prior express written consent to make this call.

35. In fact, before filing this lawsuit, the Plaintiff wrote to Dressbarn asking if they had his prior express written consent to make the call, but Dressbarn did not provide any evidence of consent.

## Class Action Statement Pursuant to LCvR 23

36. As authorized by Rule 23 of the Federal Rules of Civil Procedure and LCvR 23 of the Local Rules for the Western District of Pennsylvania, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

37. The class of persons Plaintiff proposes to represent include:

All persons within the United States: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

38. Excluded from the class are the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

39. The proposed class members are identifiable through phone records and phone number databases.

40. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

41. Plaintiff is a member of the class.

42. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether the Dressbarn used an automatic telephone dialing system to make the calls at issue;

   b. Whether the Dressbarn placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether the Dressbarn's violations of the TCPA were negligent, willful, or knowing; and

   d. Whether the Plaintiff and the class members are entitled to statutory damages because of Dressbarn's actions.

  43. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same or similar dialing system on a cellular telephone line.

  44. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions. In fact, the Plaintiff has foregone a simpler path to recovery by filing this matter as a putative class action, as opposed to an individual claim.

  45. The actions of the Dressbarn are generally applicable to the class and to Plaintiff.

  46. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Dressbarn and/or its agents.

  47. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

48. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

49. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

50. The foregoing acts and omissions of Dressbarn and/or its affiliates, agents, and/or other persons or entities acting on Dressbarn' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS.

51. As a result of Dressbarn's and/or its affiliates, agents, and/or other persons or entities acting on Dressbarn's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

52. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Dressbarn and/or its affiliates, agents, and/or other persons or entities acting on Dressbarn's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

53. The Defendant's violations were negligent, willful, or knowing.

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

    A.    Certification of the proposed Class;

    B.    Appointment of Plaintiff as representative of the Class;

    C.    Appointment of the undersigned counsel as counsel for the Class;

    D.    A declaration that Dressbarn and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

    E.    An order enjoining Dressbarn and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

    F.    An award to Plaintiff and the Class of damages, as allowed by law;

    G.    Leave to amend this Complaint to conform to the evidence presented at trial; and

    H.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: March 7, 2017          By:   /s/ *Clayton S. Morrow*
                                              Clayton S. Morrow
                                              Email: csm@consumerlaw365.com
                                              Morrow & Artim, PC
                                              304 Ross Street, 7th Floor
                                              Pittsburgh, PA 15219
                                              Telephone: (412) 281-1250

                                              Anthony Paronich
                                              Email: anthony@broderick-law.com
                                              BRODERICK & PARONICH, P.C.
                                              99 High St., Suite 304
                                              Boston, Massachusetts  02110
                                              Telephone:  (508) 221-1510
                                              *Subject to Pro Hac Vice*